UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| AM GENERAL LLC, | ) |
| --- | --- |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL NO. 3:12cv333 |
| DEMMER CORPORATION, | ) ) ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court on a "Motion for Partial Judgment on the Pleadings", filed by the defendant, Demmer Corporation ("Demmer"), on June 14, 2013. The plaintiff, AM General LLC ("AMG"), filed its response on July 15, 2013, to which Demmer replied on July 25, 2013.

For the following reasons the motion will be denied.

Standard of Review

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The court views the facts alleged in the complaint in the light most favorable to the nonmoving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). However, the court need not ignore allegations in the complaint that undermine the plaintiff's claim, or give weight to unsupported conclusions of law. *Buchanan-Moore*, 570 F.3d at 827. To survive the motion, the complaint must contain enough facts to state a claim for relief that is plausible on its face. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

AMG's claim is based upon written instruments. When ruling upon a Rule 12(c) motion,

the court may consider documents that are referenced in the pleadings and are central to the plaintiff's claims. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). When a plaintiff attaches documents to the complaint, and relies upon those documents to form the basis for a claim, the court should enter judgment against the plaintiff if the documents negate the claim. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) (the terms of the contract, fairly construed, "must prevail over the averments differing therefrom").

One of the main goals of the pleading standard is to avoid unnecessary discovery. *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012). "Applying the plausibility standard to a complaint after discovery is nearly complete would defeat this core purpose." *Id.* In *Grajales*, the First Circuit explained that "while district courts enjoy broad discretion in managing their dockets, we think that, once the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement." *Id.*; *see also Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n. 3 (8th Cir. 2010) (expressing concern regarding the appropriateness of a 12(c) motion filed after a preliminary injunction hearing that generated an extensive record).

Discussion

AMG manufactures and sells HUMVEEs to the United States government. Starting in 2007, Demmer began selling AMG armor parts, including Bi-Metal Doors, which AMG integrated into certain HUMVEE models. Demmer sold Bi-Metal Doors to AMG under the terms of blanket contracts (AMG also refers to them as "Bi-Metal Door Purchase Orders"). The

blanket contracts were periodically updated, or revised, to reflect changes in their terms.

In 2009, AMG began negotiating a new contract with the government for HUMVEE sales in the years 2010-2013. AMG in turn issued a Request For Quote ("RFQ") to its subcontractors seeking firm fixed-price contracts for the supply of certain parts, including Bi-Metal Doors. The RFQ stated that any contract resulting from the RFQ process would be subject to AMG's standard noncommercial terms and conditions for government contracts. Demmer responded to the RFQ, and supplied information regarding projected costs for the production of Bi-Metal Doors. Demmer did not object or request revisions to any of AMG's standard noncommercial terms and conditions for government contracts.

Over the course of the next several months, Demmer submitted three updated pricing proposals for the Bi-Metal Doors, the latest in December 2009. Compl. ¶¶ 24, 27-29. AMG did not accept the prices in these proposals, or the cost breakdown data that Demmer submitted to support the proposals. Id. ¶ 25, 29-31. Rather, AMG began auditing the cost data Demmer supplied to support its price proposal for the Bi-Metal Doors. *Id.* ¶ 30. AMG audited the data so that it had a basis for negotiating a price for the ensuing contract with Demmer. *Id*. ¶ 26. AMG contends that AMG and Demmer both understood that, under the terms of the RFQ, before the parties could reach a final agreement on price for the 2010 Bi-Metal Doors, Demmer had to provide current, accurate, and complete cost or pricing data to AMG. *Id*. ¶¶ 35-36. The parties would then use this as the basis for negotiating final prices. *Id.*

AMG states that because Demmer did not timely provide it with accurate and complete cost or pricing data, AMG recognized it would not be able to complete its audit before 2010 deliveries of Bi-Metal Doors would begin. Compl. ¶ 31. Therefore, AMG revised the then-

3

current Bi-Metal Door purchase orders in early 2010 so that it could order Bi-Metal Doors even though the parties had not yet agreed on a final price. *Id.* ¶ 32. These revisions established Demmer's proposed prices as not-to-exceed ("NTE") prices that were conditional placeholder prices and added a "Additional Note" in the purchase orders explaining that the NTE prices were subject to downward adjustment upon the completion of AMG's audit of Demmer's cost data. *Id*. ¶¶ 33-34. Demmer shipped nearly 40,000 Bi-Metal Doors to AMG in 2010. *Id*. ¶ 39. Demmer eventually supplied the cost data that AMG had been requesting. *Id.* ¶ 50. According to AMG the data revealed that Demmer's actual costs were significantly lower than the costs underlying its proposed prices, *id.* ¶ 54; nevertheless, Demmer refused to negotiate new prices, i*d.* ¶ 57. Instead, it insisted that the NTE prices were final, fixed prices. *Id.*

For nearly a year before AMG filed this lawsuit, it attempted to negotiate a resolution to this dispute with Demmer. In May 2011, the Defense Contract Audit Agency ("DCAA") completed its audit of Demmer's actual costs for the production of Bi-Metal Doors in 2010. Compl. ¶ 54. The report allowed AMG to determine that it had overpaid Demmer by approximately $46.5 million for Bi-Metal Doors in 2010. *Id*. On June 13, 2011, AMG promptly informed Demmer of AMG's position regarding 2010 prices. *Id*. ¶ 56. On September 9, 2011, AMG sent a letter informing Demmer of its "final decision." Compl. Ex. 7. This six-page, detailed letter provided support for AMG's contentions. *Id.* On December 8, 2011, Demmer responded to AMG, rejecting AMG's "final decision." Compl. Ex. 8. The parties then met several times over the next few months regarding the dispute but were unable to resolve the dispute. Compl. ¶ 60.

AMG filed its complaint on June 20, 2012. Demmer did not challenge the sufficiency of

the allegations in the Complaint, deciding instead to answer AMG's complaint, and assert counterclaims, on August 13, 2012. On September 26, 2012, the Court entered a Scheduling Order and discovery began. The parties have served scores of document requests, produced tens of thousands of documents, issued and answered written discovery requests, and taken and defended depositions of AMG and Demmer witnesses. The deadline for initial expert reports was August 9, 2013 and fact discovery, which began in September, 2012 will close on September 27, 2013.

The Court notes that Demmer is not merely requesting that the Complaint, or portions thereof, be dismissed for failure to state a claim. Rather, Demmer is asserting that it is entitled to judgment on portions of the complaint. To support its motion for judgment on the pleadings, Demmer argues that AMG has failed to allege facts sufficient to show that it is entitled to relief under several sections of the contract: Section 16(A); Section 24(B); and Section 29(B). Demmer also asserts that AMG has no right to reimbursement under its "Additional Note" which AMG inserted in its revised 2010 blanket contract.

The "Additional Note" is as follows:

2010 Pricing will be re-negotiated following completion of the Oct, 2009 AMG-Demmer Finance Audit results in cost breakdown changes [sic]. However, any price re-negotiated will not exceed the Dec, 2009 pricing set within this contract revision.

As noted above, AMG's Bi-Metal Door Purchase Orders incorporated AMG's standard, noncommercial Terms and Conditions ("Terms and Conditions"). Section 16(A) of the Terms and Conditions states:

Should Buyer or the Government determine that any price including profit, or fee, negotiated with Seller in connection with Order or any

5

modification thereof was increased because the Seller … furnished
incomplete, inaccurate, or non-exempt cost or pricing data as required
by the Truth In Negotiations Act or its implementing regulations or
contract clauses, then such price shall be reduced accordingly by Buyer
and the Purchase Order shall be modified in writing by Buyer to reflect
such adjustment.

[Dkt. 1-2, §16(A).]

Section 21 of the Terms and Conditions states: "Buyer may set off or recoup any amount from Seller, whether or not under this order, against any amount due Seller hereunder." [*Id.*, §21.]

Section 22 states: "Buyer may retain and/or withhold from payment to Seller an amount sufficient to reimburse Buyer for any loss, damage, expense, cost or liability relating to Seller's failure to comply with any requirements of this Order." [*Id.*, §22.]

Section 24(B) states:

Pending final decision of any dispute hereunder, the Seller shall
proceed with performance of the Order. If the dispute arises out of a
difference in interpretation between the parties as to the performance
requirements of the Order, then Seller shall continue performance in
accordance with the interpretation of performance as determined by
the Buyer.

[*Id.*, §24(B).]

Section 29(B) states, in relevant part: "Seller shall indemnify and hold Buyer harmless to the full extent of any loss, damage or expense, including lost profit, attorney's fees and court costs, for any failure or alleged failure of Seller to comply with the requirements of this Purchase Order." [*Id.*, §29(B).]

According to Demmer, AMG has failed to allege facts satisfying Section 16(A)'s conditions precedent to purchase order adjustment. On its face, Section 16(A) requires the

6

satisfaction of certain conditions before AMG may adjust a purchase order. Specifically, the price stated in the purchase order must have been increased because Demmer furnished incomplete or inaccurate cost or pricing data. [Dkt. 1-2, §16(A).] Demmer claims that AMG has made a conclusory allegation that Demmer provided incomplete or inaccurate cost or pricing data, and that the price AMG paid was increased as a result, and that AMG has failed to allege specific facts sufficient to satisfy the conditions in Section 16(A). More specifically Demmer claims that AMG has failed to allege facts sufficient to demonstrate that Demmer supplied incomplete or inaccurate "cost or pricing data" in 2009. Demmer asserts that "cost or pricing data" is a technical term, defined by federal regulation in relevant part as:

> [A]ll facts that, as of the date of price agreement, or if applicable, an earlier date agreed upon between the parties that is as close as practicable to the date of agreement on price, prudent buyers and sellers would reasonably expect to affect price negotiations significantly. Cost or pricing data are factual, not judgmental; and are verifiable. While they do not indicate the accuracy of the prospective contractor's judgment about estimated future costs or projections, they do include the data forming the basis for that judgment. Cost or pricing data are more than historical accounting data; they are all the facts that can be reasonably expected to contribute to the soundness of estimates of future costs and to the validity of determinations of costs already incurred.

48 C.F.R. § 2.101. In the Complaint AMG alleges that: (a) in 2009, Demmer provided cost or pricing data in support of proposed 2010 prices; and (b) Demmer's actual costs for 2010 turned out to be less than those included in Demmer's 2009 proposal. Demmer contends that nowhere does AMG's Complaint identify factual, verifiable data that was inaccurate or incomplete when Demmer supplied it in 2009. Demmer also argues that AMG's complaint fails to supply facts demonstrating any causal relationship between a price increase and any inaccurate or incomplete

7

cost or pricing data provided by Demmer in 2009.

AMG, in response, asserts that Demmer's motion ignores relevant facts alleged in the Complaint and that the Complaint alleges in detail that Demmer amended and re-amended its price proposals on multiple occasions, which delayed AMG's efforts to audit the data and led to AMG paying higher prices (subject to downward adjustment) until a proper audit of the data could be conducted. Compl. at ¶¶ 5, 25, 26, 40, 54. Clearly, the allegations in the Complaint properly allege that Demmer's overcharges, combined with its delay in providing complete, accurate data that could be audited, led to AMG paying inflated prices for the Bi-Metal Doors in 2010. See also Compl. ¶¶ 5, 7, 8, 9, 23-24, 27-30, 48, 50-55. AMG does not have to prove its allegations at this phase of the case. Discovery has been ongoing, and presumably AMG will be able to provide "factual, verifiable data" in support of its claims at the appropriate time, such as during defense of a summary judgment motion or at trial.

Demmer also claims that because AMG has pleaded that the parties did not reach an agreement on price for 2010 (Compl. at ¶ 25), then Section 16(A) does not even come into play. However, it is clear that even if the parties had not reached a final agreement on the price due to AMG's decision to conduct an audit, the parties had agreed on a tentative price for the purpose of permitting the deliveries of Bi-Metal Doors to begin. Compl at ¶¶ 31, 32. Section 16(A) refers to "any price . . . negotiated with Seller" and does not restrict its applicability to final prices. Therefore, the Court finds that AMG has sufficiently pled a claim under Section 16(A).

Next, Demmer argues that Section 24(B) does not provide a right of reimbursement to AMG. Section 24(B) of the Terms and Conditions provides AMG the ability, under certain conditions, to insist that Demmer "continue performance" of a purchase order "[p]ending final

decision of any dispute" that "arises out of a difference in interpretation between the parties as to the performance requirements of the Order." [Dkt. 1-2, §24(B).] Demmer contends that this section provides no right to reimbursement of money already paid to Demmer.

However, it is clear that AMG has sufficiently alleged that Demmer is required to reimburse AMG based on Section 24(B). Compl. 60, 70, 69-72, Compl. Ex. 7, 8. Whether AMG can prove its allegations is a question beyond the scope of the current motion for judgment on the pleadings.

Demmer further argues that Section 29(B), which is an indemnification clause, provides no right of reimbursement to AMG. Section 29(B) requires Demmer to "indemnify and hold Buyer [AMG] harmless to the full extent of any loss, damage, expense, including lost profit, attorney's fees and court costs, for any failure or alleged failure of Seller [Demmer] to comply with the requirements of this Purchase Order." AMG has alleged that Demmer failed to provide certified, accurate, and complete cost or pricing data, as required by the terms and conditions and to negotiate (lower) final 2010 pricing. Compl. at ¶ 67.

Demmer claims that Indiana law provides that indemnification clauses such as Clause 29(B) do not cover any first-party claims. Demmer relies on *L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031, 1047 (Ind. Ct. App. 2012), wherein the Indiana Court stated that the "general legal understanding of indemnity clauses is that they cover the risk of harm sustained by third persons that might be caused by either the indemnitor or the indemnitee."

In *L.H. Controls*, the Court of Appeals reviewed a trial court's judgment after a bench trial in a breach of contract case. 974 N.E.2d at 1040. Among the contractual provisions under which the trial court awarded damages was a provision entitled "Obligation to Indemnify."

9

*Id*. at 1046-47. The Court of Appeals held that the specific indemnification clause at issue, which covered any claims arising out of "the performance of the Contract, or the failure to perform," did not extend to first-party claims. *Id.* at 1047. AMG argues that the clause in *L.H. Controls* and the clause in Section 29(B) differ in a material way. AMG points out that Section 29(B) is not merely an indemnification provision covering liabilities arising from Demmer's performance under the contract. In fact, the terms and conditions contain a completely separate clause, Section 39, titled "Indemnification", that more closely resembles the provision in *L.H. Controls*. Compl. Ex. 2 at 16-17. Unlike the indemnification provision in *L.H. Controls*, Section 29(B) does not indemnify AMG for claims arising from both the performance and the failure to perform under the contract. Rather, Section 29(B) provides AMG a right to recover for loss, including attorney's fees, for any failure or alleged failure of Demmer to comply with the requirements of the purchase orders. *Id*. at 13.

Section 29(B) is not a typical indemnification provision, or subject to a presumption that it applies only to third-party claims, like the indemnification clause in *L.H. Controls*. Rather, Section 29(B) is a separate mechanism by which AMG can recover for loss caused by Demmer's failure to perform under the parties' contract. Section 29(B)'s focus on damage due to failure to perform rather than performance necessarily contemplates recovery for harm to AMG—the party to which Demmer's performance is owed, and the party that is harmed by Demmer's failure to perform. Thus, Section 29(B) necessarily covers first-party claims. *See L.H. Controls*, 974 N.E.2d at 1048 (distinguishing the indemnification clause in *Fackler v. Powell*, 891 N.E.2d 1091, 1098 (Ind. Ct. App. 2008), finding that in *Fackler*, the indemnification of first-party claims was implicit given the relationship of the parties to the divorce decree indemnity provision at

10

issue).

Lastly, Demmer claims that the "Additional Note" imposes only an obligation to re-negotiate the "Dec, 2009 pricing set within this contract revision." Demmer contends that, under Indiana law, even that limited obligation is not enforceable under the facts in this case. Demmer further asserts that, even if the "Additional Note" contained an enforceable obligation to re-negotiate, Demmer satisfied that obligation. AMG disputes Demmer's assertion that it satisfied its obligations.

The court notes that Demmer, by wading into disputed waters, has taken its motion beyond the proper parameters of a motion for judgment on the pleadings. The issue is whether AMG has sufficiently alleged a basis for recovery based on the language of the "Additional Note". It is clear that AMG has sufficiently pled facts that Demmer did not negotiate in good faith. Compl 54-56, 57; Compl. Ex. 7, 8. Whether the obligation in the "Additional Note" is enforceable is a fact sensitive issue that cannot be resolved by way of the current motion due to the existence of disputed facts.

Many of the issues raised by Demmer in the current motion are more appropriate for a summary judgment motion, especially considering the amount of discovery that has taken place in this case. The court has found that AMG's Complaint contains detailed factual allegations supporting various theories of recovery pursuant to the several sections of the contract at issue. Accordingly, Demmer's motion for judgment on the pleadings will be denied.

<u>Conclusion</u>

Based on the foregoing, Demmer's motion for partial judgment on the pleadings [DE 50] is hereby DENIED.

Entered: September 23, 2013.

                                                       <u>s/ William C. Lee</u>
                                                      William C. Lee, Judge
                                                      United States District Court