UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

AM GENERAL LLC,

    Plaintiff,

    v.

DEMMER CORPORATION,

    Defendant.

Cause No. 3:12-CV-00333-WCL-RBC

## OPINION AND ORDER

On October 6, 2014, following a week-long bench trial and the filing of post-trial briefs, the undersigned entered an Opinion and Order (the "Trial Order") in this breach of contract action, directing the Clerk to enter a judgment in favor of Plaintiff, AM General, LLC ("AMG") on all of its claims in the amount of $27,966,498 exclusive of prejudgment interest, costs, and attorneys' fees. [DE 208-209]. Currently before the Court is Defendant, Demmer Corporation's ("Demmer's"), "Motion for New Trial and to Alter Judgment" filed on November 03, 2014 wherein it seeks to amend the judgment and/or relitigate several issues in this case. [DE 224]. Demmer filed its supporting brief on November 20, 2014. AMG responded in opposition on December 4, 2014 to which Demmer replied on December 11, 2014.  For the following reasons, Demmer's Motion for New Trial and to Alter Judgment will be DENIED.

## I.  BACKGROUND

The Trial Order directing the $27,966,498 judgment exclusive of prejudgment interest, fees and costs in AMG's favor followed a week long bench trial held on June 16-20, 2014,

centering on what the various players at AMG and Demmer really intended when they included ambiguous language in a purchase order for bi-metal doors that Demmer produced for AMG in the years 2010-2011. (DE 208.) Additional issues related to the parties' contract were litigated, all of which the court determined favorably to AMG.[1]

The relevant language at the center of this dispute was language in a February, 2010 Change Blanket Contract ("Purchase Order") which included an additional note that became the subject of the parties' opposing interpretations.

| Item | Material | Description | Quantity | U/M | Net Price | PerUnit | Net Amount |
|------|----------|-------------|----------|-----|-----------|---------|------------|
| 13 | 6039324 | DOOR ASM-FRONT LEFT BI-METAL 100 | | EA | 3,482.34 | 1 | |
| | | Revision level: T | | | | | |
| | | Price change from $3,833.58 to $3,482.34 reflects 2010: AMG Aluminum Pricing Program status of DEC, 2009. Effective 1/01/2010 | | | | | |
| | | Additional Notes: 2010 Pricing will be re-negotiated following completion of the Oct, 2009 AMG-Demmer Finance Audit results in cost breakdown changes. However, any price re-negotiated will not exceed the Dec, 2009 pricing set within this contract revision. | | | | | |
| | | Demmer Accounting Dept must contact AMG Accounting Dept to balance delivery payments from 1/01/2010. | | | | | |

Based upon the above language, Demmer argued at trial and in all of its pretrial filings that the parties intended the price change in the first line of the Purchase Order to be a firm, fixed price to be paid for all deliveries in 2010. Demmer further argued that the "additional note" language in the Purchase Order did not require a new price only a "re-negotiation." Since the "re-negotiation" did not occur (in part because the audit referenced in the "additional note" was never concluded), it asserted that the fixed price for deliveries of bi-metal doors continued throughout 2010. Since AMG had withheld payment for some of the deliveries from Demmer pursuant to AMG's rights under other contract provisions, Demmer asserted a counterclaim for the difference between the alleged fixed price and the amount AMG withheld from it under the other provisions.

---

[1] For a full recitation of the facts of the case, see the Trial Order, DE 208.

AMG, on the other hand, argued at trial and in all of its pretrial filings, that the parties intended to set a placeholder price in the Purchase Order which served as an open, not-to-exceed price for 2010 deliveries. According to AMG, the parties intended the placeholder price to remain in place until an internal audit of the pricing was completed.[2] At that time, pricing would be re-negotiated consistent with the results of the audit with the finalized price not exceeding the placeholder price originally set. AMG further argued that since the parties never renegotiated the price, because, as AMG asserted and the Court eventually found, Demmer frustrated and delayed the audit process, the court was required to set a "reasonable price at the time for delivery." UCC §305(2). Alternatively, AMG contended that Demmer breached Clauses 16 of the Terms and Conditions of the contract ("T & C") requiring Demmer to provide accurate and complete pricing information to AMG. Under either theory, AMG argued its damages for overpayment of the doors were the same.

In addition, AMG argued that Demmer breached Clause 24 of the T & C when it refused to comply with the dispute resolution portions of the contract thereby entitling AMG to prejudgment interest on the amount overpaid to Demmer from the date of this breach. Finally, AMG asserted that Clause 29 of the T & C allowed for the recovery of attorney fees and costs for any breach of the contract.

Following the trial and preparation of transcripts, counsel submitted detailed revised proposed findings of fact and conclusions of law. (DE 202-203). After examining the entire record, considering the arguments of counsel, and determining the credibility of the witnesses, the Court entered its Trial Order in the form of Findings of Fact and Conclusions of Law and

---

[2] As set forth in the Trial Order, AMG was required to ensure that all prices charged by its subcontractors to supply parts and equipment for Government contracts to which it was a party were "fair and reasonable." Likewise, the Government had oversight to audit AMG's contracts with its subcontractors to ensure the prices it was charged by AMG were "fair and reasonable."

rendered the $27,966,498 judgment, exclusive of prejudgment interest, in favor of AMG.

(Docket # 208.) In so doing, the Court concluded as follows:

(1) AMG prevails on its claim that the ambiguous language in the Purchase Order set an open, "not to exceed" price as opposed to a fixed price. The Court concluded that the language of the Purchase Order and <u>all</u> of the extrinsic evidence, including the testimony of the witnesses from both parties, supported AMG's position that the parties intended to set open, "not to exceed" prices rather than a firm, fixed price for 2010 deliveries;

(2) Since the parties agreed to open pricing, the UCC requires the Court to establish the "reasonable price at the time for delivery" and the Court, crediting the testimony and methodology of AMG's damages expert, determined that the reasonable price at the time for delivery was consistent with AMG's expert's calculation.[3] The Court awarded damages based upon that calculation;

(3) Alternatively to item 1 above, Demmer breached Clause 16 of the T & C by furnishing AMG cost or pricing data that were incomplete and inaccurate. The Court concluded damages for this breach are equal to the UCC damage calculation in item (2);

(4) Clause 24 of the T & C required the parties to attempt to resolve the dispute over 2010 bi-metal door pricing and permitted AMG to require continued performance from Demmer while demanding a refund of the amounts AMG believed Demmer overpaid upon issuance of a Final Decision Letter on September 9, 2011;

(5) Demmer breached Clause 24 when it failed to comply with the dispute resolution process prior to litigating and did not comply with AMG's Final Decision Letter by refunding AMG amounts it claimed were owed, FOF ¶¶138-139; accordingly, AMG is entitled to the lost value of the funds that should have been refunded to it in the form of prejudgment interest from the date of the Final Decision Letter (September 9, 2011) forward.

(6) Pursuant to Clause 29 of the T & C, requiring Demmer to indemnify AMG for any damages including attorneys' fees and court costs for "any failure of [Demmer] to comply with the requirements of the Purchase Order," AMG prevails on its claim for attorneys' fees, expenses and costs.

(7) As to Demmer's Counterclaims,[4] given the Court's findings with respect to AMG's claims, Demmer failed to prove it is entitled to a refund of amounts that AMG withheld for overpayments on the 2010 price dispute.

[3] See FOF ¶¶183-184 for calculation.
[4] Demmer had two counterclaims one for deliveries in 2010 and one for deliveries in 2011. Both Counterclaims

Dissatisfied with these conclusions, Demmer filed the present motion asserting that the Court erred on a number of issues.

## II.    APPLICABLE STANDARD

Demmer brings its present motion pursuant to Fed.R.Civ.P. 59 (a) and 59(e).  Federal Rule of Civil Procedure 59(a) allows a court to order a new trial after a bench trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed.R.Civ.P. 59(a)(1)(B); *see, e.g., Hunter v. Dutton,* No. 06–cv–444, 2011 WL 3611327, at *1 (S.D.Ill. Aug.16, 2011). In deciding a motion for a new trial under Rule 59, the "district court must determine whether the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party."*Krippelz v. Ford Motor Co.,* 750 F.Supp.2d 938, 942 (N.D.Ill.2010) (quoting *Westchester Fire Ins. Co. v. Gen. Star Indem. Co.,* 183 F.3d 578, 582 (7th Cir.1999)); *see Kapelanski v. Johnson,* 290 F.3d 525, 530 (7th Cir.2004);*Powers v. Fredrickson,* No. 03–CV–670, 2008 WL 5262772, at *1 (S.D.Ill.Dec. 17, 2008). "[T]he court may, on a motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."    Fed.R.Civ.P. 59(a)(2); *see Hunter,* 2011 WL 3611327, at *1.

Under Rule 59(e), a district court may entertain "[a] motion to alter or amend a judgment." Fed.R.Civ.P. 59(e). Rule 59(e) motions are utilized for a very limited purpose: to correct manifest errors of law or fact, to present newly discovered evidence, or where there has been an intervening and substantial change in the controlling law since the submission of the issues to the district court. *Divane v. Krull Elec. Co., Inc.,* 194 F.3d 845, 848 (7th Cir.1999).

were dismissed in the Trial Order.  Trial Order, p. 85.

Thus, motions sounding under Rule 59(e) should only be granted in rare circumstances. *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990). A party seeking relief pursuant to Rule 59(e) bears a heavy burden of establishing that the court should reverse its prior judgment. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1270 (7th Cir.1996). Rule 59(e) is not an appropriate vehicle for re-litigating arguments that the district court previously rejected, or for arguing issues or presenting evidence that could have been raised previously. *Id.; Sigsworth v. City of Aurora,* 487 F.3d 506, 512 (7th Cir.2007).

### III.   DISCUSSION

In its motion Demmer makes five separate arguments.  First, Demmer takes issue with the Court's factual conclusion that the parties intended an open price term with "not to exceed language" rather than a fixed price contract and contends that the legal analysis employed by the Court constitutes manifest error of law.  Next, it argues that the court erred in the manner in which it determined damages using UCC §305.  Third, it asserts that the award of prejudgment interest and attorneys' fees is contrary to law.  Fourth, it contends that the record does not support the conclusion Demmer breached Clause 16 of the T & C's of the contract.   Finally, Demmer asserts that the dismissal of its counterclaim is against the great weight of the evidence. The Court shall address each of these arguments seriatim.

Before doing so, however, it is critical to note that Demmer presents no new evidence or changes in the controlling law, which means for purposes of Rule 59(e), it is going the manifest error of law route. This is a heavy lift. A manifest error of law under Rule 59(e) is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." <u>Oto v. Metro. Life Ins. Co.,</u> 224 F.3d 601, 606 (7th Cir.2000). It is a high standard, and simple disappointment on the part of the losing party is not enough. *Id.*    Likewise,   in   many   instances,   Demmer   is

regurgitating arguments made in previous motions, at trial, and in post-trial briefing – all of which have been previously rejected. These instances will be addressed as they arise throughout the discussion.

### A. The Court's Conclusion as To the Price Term in the Purchase Order

Demmer argues throughout a substantial portion of its brief, that the Court erred in concluding that the price term in the Purchase Order was an open, "not to exceed" term as opposed to a fixed price term. This argument is old hat; Demmer has consistently taken this position throughout this case and, as AMG points out, this became the dispositive legal question in this case.

In the Trial Order, this Court rejected Demmer's factual position and the corresponding legal analysis it posited with it. The Court, relying on the Purchase Order language, extrinsic evidence of usage of trade, the parties' prior negotiations, the course of performance, and the credibility of the witnesses' testimony, determined that the parties intended the language in the Purchase Order to, in fact, be an open price term. In fact, the Court concluded that **all** of the evidence pointed to AMG's interpretation of the ambiguous language, even Demmer's own internal documents. FOF ¶¶79-84; ¶85 (finding Demmer's internal documents consistently referring to language as "not to exceed"); FOF ¶¶s 87-92; FOF ¶¶143-162. Moreover, Demmer's own fact witnesses testified credibly that the language in the Purchase Order was the "high-end" price to be paid by AMG, see FOF ¶81 (Demmer employee, Karl Tenlen testifying that the price in the Purchase Order "was going to be the top of the line;" ¶86 (Tenlen acknowledging the price was "the highest price there could be."); and that "finality" was not achieved based on the language utilized in the Purchase Order, FOF ¶69. Rather, the pricing merely enabled production of bi-metal doors to continue while the ongoing audit was resolved.

Thereafter, the price was required to be adjusted with the final price "not to exceed" the open price set forth in the Purchase Order.

Despite all this, Demmer contends that the Court overlooked evidence that prior to the February Purchase Order the parties had previously established a fixed price for door deliveries to be continued indefinitely and that AMG requested a new fixed price proposal for 2010 deliveries which AMG accepted in the February Purchase Order. These facts, Demmer argues, demonstrate that the mutual intent of the parties was to establish a new fixed price contract rather than an open price contract.

Demmer is absolutely correct that prior to the February 2010 Purchase Order, the parties had operated under a fixed price contract for Demmer to supply bi-metal doors to AMG. The evidence at trial was that those contracts did not contain any of the "additional note" language present in the February 2010 Purchase Order and the parties did not have an ongoing audit situation as they did when the February 2010 Purchase Order was drafted. Demmer is also correct that AMG sent a RFQ ("request for quote") for 2010 deliveries seeking Demmer to provide a fixed price for deliveries occurring in 2010. The evidence was undisputed regarding these facts. But from this point forward is where Demmer's analysis goes awry. The Court specifically concluded that the parties altered the previously fixed price contract by the price change in the February 2010 Purchase Order with the language added to the Purchase Order and *they intended to do so*. The Court further concluded that the parties *intended* to set an open price that was subject to downward adjustment based on the ongoing audit. Indeed, as Demmer notes, the final goal of the parties ***was*** to attain a fixed price contract by the end of the negotiations – which the parties intended by their February 2010 Purchase Order language would occur after the renegotiation once the audit was complete. This Court concluded the parties never reached

that point.

Demmer asserts, however, that the Court failed to analyze whether Demmer and AMG shared a mutual intent to alter the contract. But, this is precisely the analysis the Court engaged in when it (1) determined the Purchase Order language was ambiguous; and (2) examined all of the facts, circumstances and extrinsic evidence to determine the meaning of the language. The Court's conclusion was based upon the credibility determinations made at trial, the controlling precedent, and an examination of all the extrinsic evidence presented to the Court. The evidence wholly supports the conclusion of the Court. Demmer's arguments to the contrary are merely attempts to rehash its own version of the events that this Court determined was not proven at trial and its attempts to have the court swayed to apply the law in a manner that results in the outcome it desires. Demmer's Motion as to this claim is DENIED.

**B. Reasonable Price at the Time for Delivery**

Next, Demmer takes issue with the Court's determination that the reasonable price at the time for delivery could be calculated using Demmer's actual, allowable costs incurred in producing those doors plus a 12.25% profit. Once again, this argument is overfamiliar to the Court.

In concluding that AMG's damages could be calculated by reference to "actual, allowable costs + 12.25% profit margin," the Court relied upon the damages testimony of AMG's damages expert, Gregory Bingham ("Bingham"). Bingham opined on the reasonable prices at the time for delivery and employed a methodology for reaching those prices that the Court accepted and which included specific reference to the unique facts of this case. From that analysis and methodology, the Court concluded that Bingham's opinion that the reasonable price for each Front Bi-Metal door shipped in 2010 was $2,264.73 and the reasonable price for each

rear Bi-Metal Door shipped in 2010 was $2,320.21 was valid and appropriate. FOF ¶166 -170. Moreover, with respect to the availability of a 12.25% profit margin, the Court concluded that Bingham's testimony was "the sole convincing evidence as to profit margin." FOF ¶171.4.

In its motion, Demmer's primary complaint is that the Court adopted a price which "gives no effect whatsoever to the parties' actual intentions or the surrounding circumstances in February 2010." (Motion, p. 15). In essence, Demmer's argument is that Bingham's testimony and the calculation of a "reasonable price" was completed in hindsight and was backward-looking based on events that occurred after the time of contract; it was not what the parties intended at the time of contract. To this end, Demmer cites an out of jurisdiction case, *MEMC Elec. Mat'ls, Inc. v. BP Solar Int'l Inc.,* 9 A.3d 508, 533 (Md. Ct. Spec. App. 2010), for the proposition that the Court should look to the reasonable price at the time of contract not at some later date. Further explained, Demmer asserts that although the Court concluded that one price should cover all 2010 deliveries, it "ignored the parties' other fundamental agreement that the price should be forward-looking, and based on projections made in 2009 – not backward looking and derived from Demmer's actual production costs incurred throughout 2010." (Motion, p. 16).

Initially, AMG reads Demmer's argument as an attack on its expert's conclusions and responds by emphasizing Demmer's lack of objection to Bingham's trial testimony or to the qualification of Bingham as an expert in the case during his trial testimony. AMG argues that although Demmer filed a pretrial motion *in limine* to preclude Bingham's testimony as an expert, and the Court denied it subject to revisiting the issue at trial, Demmer did not object to any portion of Bingham's testimony contending that he was not a "qualified expert" in the area of his opinion and expertise nor did it object at trial to his methodology, the facts employed for use in his opinion or the ultimate conclusions he reached. Rather, Demmer sat silent and thus, is

precluded from challenging Bingham's conclusion here.

While the Court finds AMG's position well-taken as it relates to Bingham's status as an expert in the case, it paints with too narrow a brush the legal issue raised by Demmer in its motion. Demmer does not, as AMG contends, take issue solely with the formulation of the opinion by Bingham. Rather, it objects to the Court's application of Bingham's opinion to override, what in Demmer's view, was anticipated by the parties at the time of their 2010 negotiations. Demmer contends that the "reasonable price" should have been developed from the facts in existence in February 2010 (retroactive to January 1, 2010) and applied to the entirety of 2010 deliveries, not from facts that came to light at a later date.

This Court's review of that argument by Demmer, however, as is true elsewhere throughout its motion, rests entirely on its view of the facts, the majority of which this Court rejected in its Trial Order. Indeed, this is the identical argument Demmer raised and this Court rejected in its Trial Order. *See* Trial Order, pp. 77-79. Nevertheless, the Court shall emphasize several key points.

First, Demmer's argument rests entirely on its factual position that the parties here "intended a single, fixed price for 2010 deliveries" from late 2009 when it responded to the RFQ through February 2010 when the Change Blanket Contract came into existence. As noted in the prior section, while that was the goal of the parties in their negotiations, this Court concluded that it did not come to fruition and no fixed price was set for 2010 only an open, not-to-exceed price. That notwithstanding, Demmer then uses language from the *MEMC Elec. Mat'ls, Inc.* case it cites to attempt to drive home the proposition that the Court made a manifest error of law by not utilizing facts known to the parties at the time of contract for making its "reasonable price" determination.

The key legal finding in the *MEMC Elec. Mat'ls, Inc.* case was based upon an argument and a factual determination not present in this case – that is the jury in that case found from the evidence that although they failed to agree on the price, the parties did specifically agreed that the price for silicon powder was to be determined based upon pricing that existed in October of the year preceding the deliveries for the entire year of deliveries. Given this finding by the jury, the Court found section 2-305, a gap-filling provision that reflects the price "at the time for delivery" controls, could not trump the parties' specific agreement as to when the price point was to be established:

> Section 2-305 serves as a gap-filler, *Havird Oil Co. v. Marathon Oil Co.,* 149 F.3d 283, 290 (4th Cir.1998), not to trump the existence of an agreement between the parties. Although the parties, in October 2006, failed to agree on a price for 2007 shipments, there was evidence, based on the e-mails, that the parties agreed to determine a singular price point for the powder as of October 2006, to be used for shipments in 2007. Similarly, there was evidence supporting a factual conclusion that a term of the contract was that the price for 2007 would be the same throughout the year. To the extent the parties reached agreement with respect to pricing, i.e., it would be set in October for the following year, that agreement trumps § 2-305.

*MEMC Electronic Materials, Inc.*, 9 A.3d at 533 - 534 (Md.App., 2010).

Here, unlike the *MEMC* case, this Court made no finding that the parties agreed that the price was to be "set" at any specific point in time for 2010 deliveries. The Court specifically concluded from the facts, that the open, not-to-exceed price for 2010 deliveries was subject to renegotiation based upon the results of the audit AND those prices were subject to the additional requirements of being supported by "accurate and complete cost or pricing data" and being "fair and reasonable." (FOF ¶¶s 19-20; FOF ¶21: "The total price proposed by a supplier must be fair and reasonable.") This Court further found that "the evidence convincingly established that Demmer's personnel intentionally provided data that would inflate the projected

costs in the 2010 price proposal." FOF ¶45 (citing testimony). Similarly, the Court concluded

that, "[i]n connection with its various price proposals for Bi-Metal Doors, including Demmer's

December 2009 price proposal, Demmer did not provide AM General with accurate or complete

data." FOF ¶29. Demmer completely overlooks these facts which distinguish this case from

the *MEMC* case it cites.

Second, Demmer also completely overlooks prior precedent in Indiana on a virtually

identical case that the Court cited in its Trial Order at p. 77:

> A little more than one year ago, Indiana Superior Court Judge Michael J.
> Scopelitis presided over a bench trial that addressed a separate dispute with
> another AM General supplier. In entering Findings of Fact and Conclusions of
> law, the Court used UCC § 305 to resolve open prices. In that case, BAE
> Systems, Inc. ("BAE") entered into contracts that provided, in relevant part,
> '[t]hese revised prices are subject to: A) Audit by AMG and/or TACOM' and 'All
> prices are 'not to exceed' and 'subject to audit & negotiations.'' *AM Gen. LLC v.
> BAE Sys., Inc.*, No. 71D07-0907-PL00195, Findings of Fact & Conclusions of
> Law (St. Joseph Sup. Ct. Apr. 2, 2013) ("*AM General v. BAE*"), ¶ 13. After a
> government audit of BAE's data revealed inflated prices, BAE refused to lower
> its prices voluntarily. *Id.* ¶¶ 144-148. Ultimately, the parties could not agree on
> the terms of the new, reduced prices in the contract. *Id.* ¶ 151. In resolving the
> parties' dispute, in which BAE (like Demmer here) claimed that it had no
> requirement to negotiate, the court determined that the contract language 'subject
> to audit' and 'subject to audit and negotiation' 'indicate[d] that BAE's armor
> prices were subject to further negotiation and not final[.]' *Id.* ¶ 208. Accordingly,
> relying on Ind. Code § 26-1-2-305(1), the Court set the reasonable prices at the
> time for delivery at "the price TACOM finally agreed to pay for BAE's parts."
> *Id.* ¶ 210. Those prices were based on BAE's actual costs incurred during the
> production year. *See id.* ¶¶ 160, 162.

Trial Order, at p. 77. As in *AM General v. BAE*, this Court determined that because the parties

did not agree on a final price, prices based on actual, allowable costs constituted the "reasonable

price at the time for delivery." Accordingly, the Court again rejects Demmer's argument that

the use of actual, allowable costs plus a reasonable profit margin of 12.25% as a "reasonable

price for delivery" pursuant to UCC 2-305 was a manifest error of law.

### C. Award of Prejudgment Interest

Next on Demmer's list of manifest errors of law committed by the Court is its contention that the Court erred in awarding prejudgment interest. As discussed in the Trial Order, the Court's conclusion that AMG is owed prejudgment interest rested on the language from the T & C of the parties' contract --specifically, Clause 24. Trial Order, p. 84.

The T & C contained a dispute resolution mechanism in Clause 24 which provided that where a dispute lies between the parties, AMG has the right to issue a "final written decision on the proposed resolution of the dispute before litigating." Trial Order at p. 84. The T & C provide as follows:

> Pending final decision of any dispute hereunder, the Seller [Demmer] shall proceed with performance of the Order. If the dispute arises out of a difference in interpretation between the parties as to the performance requirements of the Order, then Seller shall continue performance in accordance with the interpretation of performance as determined by Buyer [AMG].

The facts here were undisputed at trial and the parties entered stipulations as to the facts, namely: (1) AMG issued its "Final Written Decision" on the disputed matters September 9, 2011. FOF ¶137; Stip. #39; and (2) "In response to the Final Decision letter, Demmer did not pay AMG any of the requested funds or drop its request for reimbursement of the funds that AMG had already withheld. FOF ¶139; Stip. #39. Moreover, the Final Decision letter (documented as PTX-174) documented AMG's position that it had overpaid Demmer for bi-metal doors and should be refunded based upon the contract interpretation dispute. Given the language of T & C's, Demmer was bound to accept that Final Decision, continue its performance and litigate later. However, the facts are clear: Demmer did not comply with the Final Decision letter and thus, it breached Clause 24.

Demmer does not make any legitimate argument that the Court erred in its determination

that it breached Clause 24 by failing to comply with the terms of the Final Decision Letter.[5] Rather, Demmer's focus is on the fact that (1) the amounts in the Final Decision letter were "overstated" and, thus AMG should receive no award of prejudgment interest even for the amount this Court determined it was owed; and (2) Indiana law disallows an award of prejudgment interest when more than a simple mathematical calculation is involved. These arguments do place some interesting wrinkles in the analysis, as discussed below, but they are ultimately to no avail for Demmer.

Clause 24 of the contract provides that Demmer was bound to "continue performance with the interpretation of performance as determined by AMG" – it does not say it is bound to continue performance only if Demmer agrees with AMG's interpretation of the dispute.[6] Rather, Clause 24 is designed to bind both parties to continue production/payment and litigate their disputes separately so as not to disturb the production process. Here, the parties stipulated that AMG invoked clause 24 and sought overpayment of a fixed amount of $28,411,551 it determined; Demmer stipulated that it did not pay AMG in the Final Decision letter and did not pay $28,411,551.

As the argument goes from AMG's perspective, Demmer's failure to comply with the Final Decision Letter and pay the amount it unilaterally determined to be owed, cost it the time value of those funds from the date of the Final Decision letter through trial. This cost is best

---

[5] Demmer makes an undeveloped argument that there is no parity between the Court's conclusion that an open price term existed and, at the same time, its finding that Demmer breached other contract provisions. This Court disagrees. The Court concluded, under alternate findings, that AMG's primary arguments on the price of bi-metal doors prevailed. The Court further found that the damages flowing therefrom were the same. The issue of Clause 24 is yet *another* contract issue that the Court had to decide independent of the pricing term. Did Demmer breach Clause 24 by failing to comply with Clause 24's dispute resolution provisions and, if so, what damages flow from the breach? Ultimately, the trial evidence as set out in the Trial Order sustained the court's conclusions that Demmer did breach Clause 24. The Court then assigned damages for that breach, in addition to the damages AMG suffered by way of the pricing determination, These damages included prejudgment interest from the date of the Final Decision letter and the award of fees based on the fee-shifting provision of Clause 29. Trial Order at p. 84

[6] Indeed, that would be contrary to the entire point of the provision, which was to resolve disputes subject to later litigation, if necessary, while still maintaining the flow of production.

recouped through prejudgment interest. Indeed, prejudgment interest represents an element of complete compensation in terms of the lost use of money. *Layden v. New Era Corp.,* 575 N.E.2d 638, 641(Ind.Ct.App.1990); *Bd. Of Public Works v. L. Cosby Bernard,* 528 N.E.2d 93, 95 (Ind.Ct.App.1988). As such, prejudgment interest is not simply an award of interest on a judgment, but rather is recoverable as "additional damages to accomplish full compensation." *Harlan Sprague Dawley v. S.E. Lab Group,* 644 N.E.2d 615, 619 (Ind.Ct.App.1994), *trans. denied.* Thus, AMG argues that it is entitled to prejudgment interest on the amount that it was owed pursuant to Clause 24 to compensate it for its loss of use of that amount. That amount was a fixed amount as stated in the Final Decision Letter and thus, prejudgment interest is appropriate. To the extent that amount exceeds what the Court ultimately determined to be a "reasonable price" under other claims that arose in the case, it concedes the prejudgment interest award would be offset by those amounts.

From Demmer's perspective, however, the amount sought by AMG in its Final Decision letter was overstated by almost $475,000 and, it was not until October 6, 2014 when this Court entered its Trial Order that the amount Demmer owed to AMG was "fixed" or established. Demmer then looks to Indiana law for aid in determining whether prejudgment interest is owed and concludes it cannot be because the amount it owed to AMG was not a simple mathematical calculation at all; it was an amount that required the undersigned's judgment thereby precluding such an award.

An award of pre-judgment interest in a breach of contract action is warranted in Indiana "if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable." *Noble Roman's Inc. v. Ward,* 760 N.E.2d 1132, 1140 (Ind.Ct.App.2002). "The test for determining whether an award of pre-judgment interest is

appropriate is whether the damages are complete and may be ascertained as of a particular time." *Id.* An award of prejudgment interest is proper when the trier of fact does not have to exercise judgment in order to assess the amount of damages. *Kummerer v. Marshall,* 971 N.E.2d 198, 201 (Ind.Ct.App.2012), *trans. denied.* Therefore, "an award of pre-judgment interest is generally not considered a matter of discretion." *Noble Roman's Inc.,* 760 N.E.2d at 1140.

Demmer asserts that because the Court had to ultimately determine the "reasonable price," it had to exercise judgment in assessing the amount of damages to which AMG was entitled and no prejudgment interest is awardable. As a general notion, Demmer is correct. Indiana law, as well as other states' laws, have expressly addressed this issue and support the conclusion that prejudgment interest should only be awarded where the amount of damages was clear and did not require any interpretation or judgment on the part of the trier of fact. In *WESCO Distribution, Inc. v. ArcelorMittal Indiana Harbor LLC,* 23 N.E.3d 682, 715 (Ind.App. 2014), the Court vacated the trial court's determination that prejudgment interest applied to the verdict where the jury's verdict, by virtue of it being approximately ten million dollars less than the total damages claimed by the defendant demonstrated that it required the use of their judgment and was not "a single fixed component of its total damages ... which was readily ascertainable." See also *Indiana Indus., Inc. v. Wedge Prods., Inc.,* 430 N.E.2d 419, 427 (Ind.Ct.App.1982) ("[P]re-judgment interest is proper where the trier of fact need not exercise its judgment to assess the amount of damages.").

Demmer is correct that the ascertainable amount of damages was not fixed until October 6, 2014 when this Court entered its Trial Order and determined the "reasonable price." That determination of the amount of damages was not a simple calculation based on a fixed price established in the contract as Indiana law requires; rather, as this Court has repeatedly noted, the

calculation of damages in this case required the court to assess competing expert testimony, analyze a number of factors and was ultimately a figure that was not readily known or calculated while the parties litigated this case. *See Lickley v. Max Herbold, Inc.*, 984 P.2d 697, 701 (Idaho,1999) (*"In the present case, the amount due under the contract was a reasonable price at the time for delivery. While we agree with the district court that the market price at the time of delivery was a reasonable price, that figure was not readily known or calculated until after the court rendered its decision."*); *Steve's Outdoor Invs., LLC v. Reynolds Forestry Consulting–RFC, Inc.,* 2013 Ark.App. 40 (prejudgment interest is not recoverable where the parties' contract omits a specific price term and the court must insert a "reasonable" amount). It is for this reason that the Court did not award prejudgment interest to AMG based upon the reasonable price determination it made. Rather, at p. 79 of the Trial Order, this court specifically noted the damages that AMG was entitled to and cross-referenced other portions of the Order to follow with respect to "prejudgment interest, costs of court, and attorneys' fees and expenses." Likewise, the Court only addressed the concept of prejudgment interest as it related to the Clause 24 breach.

Given these points, the problem with Demmer's argument is that it does not tie the prejudgment interest award to the specific breach of Clause 24; instead, it relates it to the Court's conclusion on the "reasonable price" calculation. The damages for the breach of Clause 24 relate directly to the amount AMG claimed it was owed and not paid. That amount was $28,411,551 – a fixed amount established in the Final Decision Letter. While ultimately, this court concluded that AMG was wrong in the amount it sought in its Final Decision Letter, that does not alter the landscape that Demmer was required to comply with the Final Decision Letter and did not. Thus, prejudgment interest was appropriate based on the fixed amount in the Final Decision

letter and awarded from the date of that letter, September 9, 2011 forward.[7]    Accordingly, the

Court DENIES Demmer's motion with respect to the issue of the award of prejudgment interest.

### D.  Attorneys' Fees

With respect to the award of attorneys' fees, Clause 29 is a fee shifting provision that

requires Demmer to indemnify AMG for attorneys' fees and expenses for breach of the

underlying contract.  As noted above, this Court properly concluded that Demmer breached

Clause 24 of the T & C's of the contract and thus, Clause 29 serves to shift the liability for

AMG's attorneys' fees to Demmer for its failure to comply with the parties' contract.  Demmer's

motion to vacate the award of attorneys' fees is DENIED.

### E.  The Trial Order's Conclusion that Demmer Breached Clause 16

Next, Demmer asserts that this Court's conclusion that Demmer breached Clause 16 is

"inherently inconsistent with the conclusion that the parties had an open price agreement for

2010."  Although Demmer frames the analysis in terms of legal "inconsistency," its argument

that follows this position seemingly switches to a sufficiency of the evidence argument rather

than a legal argument.  Either way, however, the position is not well-taken and the record clearly

supports the Court's determinations.

The Court's decision as to Clause 16 is an alternative remedy for AMG to recover the

identical amount the Court awarded under its primary theory of relief.  Indeed, while AMG

recovered under its primary contention that the parties did not set a fixed price for 2010

deliveries with the resulting "reasonable price" determined by the Court, the Trial Order clearly

articulates that an award under Clause 16 would have been warranted *even if* it had not prevailed

---

[7] Moreover, Demmer was not prejudiced by the fact that AMG overstated the amount in the letter as the
prejudgment interest calculation utilized by the Court applied equitable considerations to and awarded prejudgment
interest only on the portion of the $28,411,551 that this Court ultimately found was, in fact, owed to Demmer rather
than the full fixed amount.

under its primary theory. To that end, the Court noted that Clause 16 of the T & C protects AMG from overcharges by its suppliers and provides it with both a right (to request accurate and complete pricing data) and a remedy (to unilaterally decrease prices for inaccurate and incomplete pricing data). Trial Order, pp. 79-80. This Court then made findings that (1) AMG requested cost or pricing data from Demmer, FOF¶¶9-11; (2) Demmer submitted inaccurate and incomplete pricing data, FOF ¶¶38-46; (3) Demmer did so intentionally, FOF ¶¶42.4 ("Demmer furnished information designed to mask the fact that the labor hours projection combined labor hours for making two different products."); FOF ¶45 ("The evidence convincingly established that Demmer's personnel intentionally provided data that would inflate the projected costs in the 2010 price proposal."); (4) Demmer's act of furnishing inaccurate cost or pricing data that inflated the projected costs in its 2010 price proposal breached Clause 16, Trial Order p. 82; (5) AMG relied to its detriment on the inflated costs thereby causing it damage in the amounts it overpaid Demmer for the Bi-Metal doors; and (6) AMG was entitled to recover the same amounts under Clause 16 that the undersigned ordered under AMG's open price claim. Trial Order, p. 83.

Based on the above factual findings and their application to the contract provisions, the Court finds no legal "inherent inconsistency" with the determinations made with respect to its determination that Demmer breached Clause 16.

### F. The Dismissal of Demmer's 2011 Counterclaim

Finally, Demmer takes issue with the Court's dismissal of its counterclaim for amounts it claims AMG underpaid it with respect to Bi-Metal doors delivered in 2011. It is critical to note that as a counterclaimant, Demmer bore the burden of proof at trial on its claim that AMG breached its contract with Demmer by reducing the prices it paid to Demmer for deliveries in

2011.  The problem for Demmer is that this Court specifically found that Demmer did not meet its burden of proof on this claim.  FOF ¶¶189-191.  Not only did Demmer produce no evidence that AMG breached the contract by its reduction of the prices, it produced no evidence to support a claim for damages.  Accordingly, the Court rightfully concluded that it did not meet its burden of proof on its counterclaim and dismissed it.  Demmer's Motion is therefore, DENIED.

## IV.    <u>CONCLUSION</u>

Demmer has not demonstrated any manifest errors of law so as to warrant relief under Rule 59's stringent standard.  Accordingly, based on the foregoing, Demmer's Motion for New Trial and to Alter Judgment is DENIED. [DE 224].

Entered: This 18th day of March, 2015

<u>s/William C. Lee</u>
William C. Lee
United States District Court